UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 20-21617-CIV-MORENO

GLD, LLC,

       Plaintiff,

vs.

GOLD PRESIDENTS, LLC and DERRICK
JAMES MCDOWELL,

       Defendant.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

THIS CAUSE came before the Court upon Motion to Dismiss Plaintiff's Complaint (**D.E. 15**), filed on **July 27, 2020**.

THE COURT has considered the motion, the response in opposition, the reply, pertinent portions of the record, and being otherwise fully advised in the premises, it is

**ADJUDGED** that the motion is GRANTED IN PART AND DENIED IN PART.

### I.  Executive Summary

The motion to **dismiss** for lack of personal jurisdiction over the corporate defendant (Gold Presidents LLC) is **denied** and is **granted** for the individual defendant (Derrick James McDowell). Defendant's motion to dismiss for failure to state a claim is **granted** on all counts because the Plaintiff fails to include sufficient facts from which the Court could plausibly infer that Plaintiff has a case for trademark infringement. The dismissal is **without prejudice**.

### II.  Background

Plaintiff, GLD LLC, is a Delaware company with principle place of business in Miami. It designs and sells luxury jewelry and fashion. The Defendant, Gold Presidents, largely does the same. Derrick James McDowell is the president of Gold Presidents. Both Defendants are Texas citizens. Plaintiff brings six counts of trademark infringement—three federal, three Florida—

against Defendants, and asks the Court to pierce the corporate veil to hold McDowell responsible for Gold Presidents' acts. Gold Presidents offered a watch for sale that is very similar to a watch that GLD has offered for sale since May 2019. Defendants never completed a sale, and the watch is no longer listed.



### III. Personal Jurisdiction

Defendants argue they are not subject to personal jurisdiction in Florida. The Court will address Defendant in turn. Plaintiff alleges that Defendants created a website for the purpose of offering for sale a wristwatch that violates Plaintiff's trade dress. The website was accessible, and was indeed allegedly accessed, in Florida (although no sales were completed).

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss a claim against it by asserting the defense of lack of personal jurisdiction. Because "[f]ederal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons[,]" *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (alterations added; citing Fed. R. Civ. P. 4(k)(1)(A)), a federal court sitting in Florida may properly exercise personal jurisdiction only if the requirements of (1) Florida's long-arm statute and (2) the Due Process Clause of the Fourteenth Amendment to the United States Constitution are both satisfied, *see Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 (11th Cir. 1999)

There are two types of personal jurisdiction: specific and general. *Madara v. Hall*, 916 F.2d 1510, 1516 n.7 (11th Cir. 1996). Specific jurisdiction authorizes a Court to exercise over defendants when the cause of action arises from or relates to the defendant's actions within a state. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1352 (11th Cir. 2013). Because the Plaintiff only alleges specific jurisdiction, the Court need not address general jurisdiction.

Plaintiff claims the Court has personal jurisdiction over Defendants under section 48.193(1)(a)(2) of Florida law. The Court considers two questions when asked to exercise jurisdiction over a nonresident defendant: (1) whether personal jurisdiction exists over the nonresident defendant under Florida's long-arm statute, and (2) if so, whether that exercise of jurisdiction would violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. *Mosseri*, 736 F.3d 1339.

### A. Florida Long-Arm Statute

First, the Court addresses the Florida long-arm statute. In the Eleventh Circuit, § 48.193(1)(a)(2) of that statute permits jurisdiction over the nonresident defendant who commits a tort outside of the state that causes injury inside the state. *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008). "It is well settled in the Eleventh Circuit that trademark claims under the Lanham Act allege tortious acts for long-arm purposes[.]" *PG Creative Inc. v. Affirm Agency, LLC*, No. 18-cv-24299, 2019 WL 5684219, at *4 (S.D. Fla. Oct. 31, 2019) (alteration added; citation omitted); *see also Hard Candy, LLC v. Hard Candy Fitness, LLC*, 106 F. Supp. 3d 1231, 1239 (S.D. Fla. 2015) (recognizing trademark infringement under 15 U.S.C. section 1114, false designation of origin under 15 U.S.C. section 1125(a), trademark dilution under 15 U.S.C. section 1125(c), and common law unfair competition involve "tortious acts" under the long-arm statute (quotation marks omitted; collecting cases)).

In *Lovelady*, 544 F.3d 1280, Plaintiff, a well-known singer, sued a Defendant who allegedly created a website (accessible in Florida) that used Plaintiff's trademarked name and picture to imply an endorsement from Plaintiff. The panel held that "although the website was created in Tennessee, the Florida long-arm statute is satisfied if the alleged trademark infringement on the website caused injury in Florida." *Id.* at 1283. Further, "the alleged infringement clearly also occurred in Florida by virtue of the website's accessibility in Florida." *Id.* Thus, *Lovelady* squarely governs this case. Because the website is accessible in Florida, Florida is where injury and a tortious act occurred. This gives rise to jurisdiction under §

48.192(1)(a)(2). *Cf. Internet Solutions Corp. v. Marshall*, 39 So. 3d 1201, 1214-15 (holding that the tortious act of defamation is completed where the information is published and viewed).

However, it is also worth noting the Eleventh Circuit's decision in *Louis Vuitton Malletier*. There, the Court found there was personal jurisdiction over an allegedly trademark infringer under the same section of the Florida long-arm statute because "trademark infringing goods were not only accessible on the website, **but were sold to Florida customers** through that website." *Mosseri*, at 1354 (emphasis added). The Court does not read that language as *requiring* a sale through the website in order to satisfy the Florida long-arm statute, and Courts in this district have found personal jurisdiction in similar cases without specifically noting that sales were completed through the website. *Kumbrink v. Hygenic Corp.*, No. 15-CIV-23530, 2016 WL 5369334 (S.D. Fla. Sept. 26, 2016) (Cooke, J.) Further, even in cases where sales are made, Courts in this district do not seem to treat the sale as dispositive. For example, Judge Marra wrote,

> Furthermore, contrary to Defendant's argument otherwise, in determining whether the defendant had committed a tortious act within the state for purposes of Florida's long-arm statute, the *Mosseri* court did not purport to rest its determination on the substantial quantity of goods sold in Florida.

*Weingartner v. Draper James, LLC*, No. 15-81581-CIV, 2016 WL 8678544 (S.D. Fla. Oct. 4, 2016). Thus, the lack of completed sales does not mean that the Plaintiff does not satisfy the Florida long-arm statute, but it may play a role in the due process analysis discussed below.

B. Due Process

If the Florida long-arm statute is satisfied (as it is here), the Court still may not exercise jurisdiction over the Defendant if doing so would violate the Fourteenth Amendment's Due Process Clause.

The exercise of jurisdiction over a non-resident must "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation omitted). The Eleventh Circuit Court of Appeals has set forth a three-part test to determine whether an exercise of specific personal jurisdiction comports with due process. Under this test, the Court must examine: (1) Whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state,

thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice." *See Louis Vuitton Malletier, S.A.*, 736 F.3d 1339, 1355 (11th Cir. 2013). In performing this analysis, the Court identifies all contacts between a nonresident defendant and a forum state and ask whether, individually or collectively, those contacts satisfy these criteria. *Id.* at 1357.

    i.   Arises Out Of/Relates To

  The first prong is satisfied. A "tort 'arises out of or relates to' the defendant's activity in a state only if the activity is a 'but-for' cause of the tort." *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1314 (11th Cir. 2018) (alterations adopted; citation omitted). Defendants' offer of the wristwatch for sale on its interactive website is the but-for cause of Plaintiff's claims, and so the Court will consider that activity in its Due Process analysis. However, Plaintiff urges the Court to also consider Defendant's Florida sales of non-infringing merchandise—likely because no watches were actually sold. These other sales are not a but-for cause of Plaintiff's allegations. Thus, under the Eleventh Circuit's strict test for "arising out of or relating to," the Court will not explicitly consider those sales as part of the jurisdictional analysis. But the Court will not shut its eyes to those contacts either; they will be useful in determining whether Defendants' offer of the allegedly infringing watch was a purposeful availment of the forum's privileges and whether jurisdiction comports with fair play and substantial justice.

    ii.   Purposeful Availment

  The second prong is more complicated in this case. When faced with an intentional tort case such as this one, the Court may answer the purposeful availment question in two ways. The first is the Effects Test, which is available in intentional tort cases. *Aviation One of Fla., Inc. v. Airborne Ins. Consultants (PTY), Ltd*, 722 F. App'x 870 (11th Cir. 2018) (citing *Calder v. Jones*, 465 U.S. 783 (1984)). That test requires a showing that the defendant (1) committed an intentional tort (2) that was directly aimed at the forum, (3) causing an injury within the forum that the defendant should have reasonably anticipated. First, trademark infringement is an intentional tort. Next, when considering whether the Defendants aimed their conduct at the forum, the Court must consider more than just a defendant's relationship to the plaintiff and the plaintiff's location. In *Walden v. Fiore*, a Supreme Court case subsequent to *Lovelady*, the Court explained that the plaintiff cannot be the only link between the defendant and the forum, and that

5

mere injury to a forum resident is not a sufficient connection to the forum. *Walden v. Fiore*, 571 U.S. 277 (2014); *Cf. Volt, LLC v. Volt Lighting Group LLC*, 369 F. Supp. 3d. 1241 (M.D. Fla. Feb. 25, 2019) (finding no personal jurisdiction where "nothing that shows VLG's website was viewed by, and confused, a Florida consumer or even targeted a Florida consumer. Additionally, nothing suggests that VLG's limited sales to Florida resulted from the allegedly infringing website, which included no mechanism to effect a purchase."). Defendant aimed to sell its watch in Florida, even though the sale was not completed. As evidenced by its previous sales through the same website, Defendant likely intended that its website would reach customers in Florida.[1] Finally, by the same token, Defendant knew that its conduct would cause injury in Florida because it knew that Florida customers had purchased from the site before. Additionally, while not in the pleadings, a visit to the Defendants' website reveals an entire section devoted to "Miami Cuban" gold chains.

Alternatively, the Court could answer the purposeful availment question by evaluating the Defendants' conduct through the *Zippo* framework. *Zippo Mfg. Co. v. Zippo Dot Com,* 952 F. Supp. 1119 (W.D. Pa. 1997).[2] It is clear that websites through which commerce is conducted sit at the far end of the *Zippo* sliding scale framework, indicating jurisdiction; whereas websites that merely post information sit at the other end. *Id.*; *Foreign Imported Prods. & Pub., Inc. v. Grupo Indus. Hotelero, S.A.*, No. 07-22066-CIV, 2008 WL 4724495 (S.D. Fla. Oct. 24, 2008). In an almost identical Northern District of Georgia case where the Defendant was selling trademarked products online into the forum state, and such sales were the only connection between Defendant and the forum state. There, Judge Julie Carnes (then on the District Court) applied both the *Zippo*

---

[1] While the pleadings do not specify what percentage of Defendant's sales came from Florida, Defendant puts the number at "less than 10%."

[2] The Eleventh Circuit has acknowledged *Zippo* but has neither adopted nor rejected *Zippo*'s "sliding scale." *Louis Vuitton*, 736 F.3d at 1355 n.10; *Oldfield*, 558 F.3d at 1219 n.26. However, several federal circuit courts and several federal district courts in Florida have adopted *Zippo*'s sliding scale to consider whether exercising personal jurisdiction accords with due process. *Phazzer Elecs. Inc. v. Protective Sols., Inc.*, No. 6:15-cv-348-Orl-31DAB, 2016 WL 3543638, at *5 n.9 (M.D. Fla. June 29, 2016) (Presnell, J.) ("While *Zippo* test is not binding in this jurisdiction, it is a factor this Court may take into account"); *Pathman v. Grey Flannel Auctions, Inc.*, 741 F.Supp.2d 1318, 1325 (S.D. Fla. 2010) (King, J.) ("The court views internet activity within the sliding scale provided by *Zippo*, as an aspect of purposeful availment, but not as definitive in and of itself"); *Foreign Imported Prods. & Publ'g, Inc. v. Grupo Industrial Hotelero, S.A.*, No. 07-22066-CIV, 2008 WL 4724495, *7–9 (S.D. Fla. Oct. 24, 2008) (Gold, J.) (recording *Zippo*'s adoption by federal circuit courts and Florida's district courts of appeal and using *Zippo*'s sliding scale to determine whether the defendant's website supported Florida's exercising personal jurisdiction); *Knights Armament Co v. Optical Sys. Tech., Inc.*, No. 6:07-cv-1323-Orl-22KRS, 2008 WL 2157108, at *7 (M.D. Fla. May 21, 2008) (Conway, J.) (citing *Zippo* and concluding "[t]hat [the defendant's] website may be viewed in every state is not a sufficient contact with Florida to support specific ... jurisdiction").

framework and the traditional purposeful availment analysis and found there was personal jurisdiction. *Rice v. PetEdge, Inc.*, 975 F. Supp. 2d 1364, 1371 (N.D. Ga. 2013) ("Defendant's creation of a website that allows Georgia customers to directly purchase its products constitutes purposeful availment, as defendant financially benefits from doing business in Georgia."). Judge Carnes cited *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) for the proposition that when a corporation conducts business in a forum, it is on notice that it may be sued there and is therefore subject to personal jurisdiction. *Id.* In so holding, Judge Carnes rejected Defendant's arguments that 1% or 2% of total sales is insufficient to confer jurisdiction and that a lack of forum-specific targeted advertising would defeat a finding of personal jurisdiction. *See also easyGroup Ltd. v. Skyscanner, Inc.*, No. 20-20062-CIV, 2020 WL 5500695 (S.D. Fla. Sept. 11, 2020) ("Easyfly purposefully availed itself of the privileges of conducting business in Florida. Easyfly clearly does business over the Internet in the United States and Florida; is willing to (and does) directly sell its services to Florida customers; has not limited its sales to any region or area; and accepts payment from Florida customers.") (Altonaga, J.). Here, Defendant cannot "have its cake and eat it, too . . . ." It cannot have the "benefit of a nationwide business model with none of the exposure." *Illinois v. Hemi Grp. LLC,* 622 F.3d 754, 760 (7th Cir. 2010). Thus, the Court finds there was purposeful availment.

        iii.     <u>Fair Play</u>

Once the Court finds that minimum contacts exist, the burden shifts to the defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp.,* 471 U.S. at 477. The "fair play and substantial justice factor is to be applied sparingly." <u>easyGroup Ltd. v. Skyscanner, Inc.</u>, No. 20-20062-CIV, 2020 WL 5500695, at *12 (S.D. Fla. Sept. 11, 2020). This inquiry considers five "fairness factors" to determine whether exercising jurisdiction over a defendant is reasonable: (1) the burden on the defendant of litigating in the forum, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) states' shared interest in furthering fundamental social policies. *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1276 (11th Cir. 2002). In this all things considered inquiry, neither party presents facts that should sway the Court in one direction or the other. It would not

7

violate fair play and substantial justice to exercise jurisdiction over the corporate Defendant here, when minimum contacts exist.

### C. Personal Jurisdiction Over Individual Corporate Officer

Plaintiffs also ask that the Court exercise personal jurisdiction over Derrick James McDowell, Gold Presidents LLC's President. The Complaint alleges that the corporation is a mere instrumentality for McDowell and his alter ego, thus, McDowell is personally liable for the acts of the corporation. This allegation presents two issues: First, does the complaint sufficiently allege enough to pierce the corporate veil? Second, if it does not, can this Court still exercise personal jurisdiction over McDowell? The answer to both questions is a clear "no."

Under Texas law (the state in which Gold Presidents is incorporated), "[t]here must be something more than mere unity of financial interest, ownership and control for a court to treat the subsidiary as the *alter ego* of the parent and make the parent liable for the subsidiary's tort. The corporate entity of the subsidiary must have been used to 'bring about results which are condemned by the general statements of public policy which are enunciated by the courts as 'rules' which determine whether the courts will recognize their own child.'" *Lucas v. Texas Indus., Inc.*, 696 S.W.2d 372, 374 (Tex. 1984) (internal citations omitted). Plaintiff's allegations plainly fail to a state a claim that meets the above standard. Other than conclusory allegations such as "Gold Presidents is a mere instrumentality" and "Gold Presidents has only one or very few members, fails to follow corporate formalities, intermingles assets with Defendant James, and/or is inadequately capitalized," Plaintiff alleges no concrete factual matter to support those statements nor the general allegation that the Corporation is McDowell's alter ego. Further, McDowell submits an unrebutted declaration that states he has not personally sold any infringing products, nor does he have any significant contacts to Florida, nor did he intentionally infringe trade dress, nor does he have a joint bank account with the Corporation.

Plaintiff both fails to allege sufficient factual information for this Court to pierce the corporate veil under Texas law and fails to allege sufficient factual information to even make a prima facie case of personal jurisdiction over Defendant McDowell. *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 (11th Cir. 1999). The claims against the individual defendant are dismissed for lack of personal jurisdiction and the Court declines to pierce the corporate veil, as this Court has declined to do before. *Tingle v. Banks*, No. 06-60700-CIV, 2006 WL 8431545, at *3 (S.D. Fla. Dec. 20, 2006) (Moreno, J.), *aff'd*, 232 F. App'x 956 (11th Cir. 2007).

### IV. Failure to State a Claim

Plaintiff alleges three counts under 15 U.S.C. § 1125(a) and (c) and three counts under Florida law. Plaintiff does not have a trademark on its product, and according to the Defendant, it has only been on sale since May 2019. The complaint is largely devoid of any specific factual allegations, which I will address count-by-count below.

In order to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead sufficient facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When ruling on such a motion, a court must view the complaint in a light most favorable to the plaintiff and accept the plaintiff's well-pleaded facts as true. *See Twombly*, 550 U.S. at 555-56. In order to establish a facially plausible claim, a plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

#### A. Count I: Federal Trade Dress Infringement under 15 U.S.C. § 1125(a)

Section 43(a) of the Lanham Act creates a federal cause of action for trade dress infringement. *AmBrit, Inc. v. Kraft, Inc.,* 812 F.2d 1531, 1535 (11th Cir. 1986). "The term 'trade dress' refers to the appearance of a product when that appearance is used to identify the producer." *Publications Int'l, Ltd. v. Landoll, Inc.,* 164 F.3d 337, 338 (7th Cir. 1998). "'Trade [d]ress' involves the total image of a product and may include features such as size, shape, color ..., texture, graphics, or even particular sales techniques." *AmBrit,* 812 F.2d at 1535 (internal quotation omitted).

In order to prevail on a claim for trade dress infringement pursuant to this statute, a Plaintiff must prove by a preponderance of the evidence that (1) the trade dress of the two products is confusingly similar; (2) that the features of the trade dress are primarily nonfunctional; and (3) that the trade dress is inherently distinctive or has acquired secondary meaning. *Vital Pharm., Inc. v. Am. Body Bldg. Prod., LLC*, 511 F. Supp. 2d 1303, 1309–10 (S.D. Fla. 2007) (Middlebrooks, J.). I will address each in turn.

##### i. Likelihood of Confusion

Courts in this Circuit "consider seven factors in assessing whether or not the "likelihood of confusion" exists: (1) the type of mark (in short, whether the "relationship between the name

and the service or good it describes" is such that the chosen name qualifies as generic, descriptive, suggestive, or arbitrary); (2) the similarity of the marks (based on "the overall impressions that the marks create, including the sound, appearance, and manner in which they are used"); (3) the similarity of the goods ("whether the products are the kind that the public attributes to a single source"); (4) the similarity of the parties' retail outlets, trade channels, and customers ("consider[ing] where, how, and to whom the parties' products are sold"); (5) the similarity of advertising media (examining "each party's method of advertising" to determine "whether there is likely to be significant enough overlap" in the respective target audiences such "that a possibility of confusion could result"); (6) the defendant's intent (determining whether the defendant had a "conscious intent to capitalize on [the plaintiff's] business reputation," was "intentionally blind," or otherwise manifested "improper intent"); and (7) actual confusion (that is, whether there is evidence that consumers were actually confused)." *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 648 (11th Cir. 2007). "Because the bottom line is the likelihood of consumer confusion, application of the *Frehling* factors entails more than the mechanistic summation of the number of factors on each side; it involves an evaluation of the 'overall balance.'" *Id.* at 649.

Plaintiff makes it difficult for the Court to apply these factors in an informed fashion. Beyond the side-by-side graphic, there is no specific, factual information included in the complaint. Mostly, Plaintiff alleges bare recitations of the elements of each cause of action. For example, Plaintiff does not include the total sales for each product (Defendants note not even one of their watches were sold before the product was removed from the site), where advertisements are placed, how much (if any) advertising was done, where each watch is offered for sale, etc. However, I think that a simple glance at the side-by-side picture is enough for Plaintiff to survive a motion to dismiss on this prong of the inquiry. Save for the "Pres" small difference in the second hand, the watches are identical. Any closer analysis is best done by the fact-finder. *Cf. Tana v. Dantanna's*, 611 F.3d 767, 775 n.7 (11th Cir. 2010) ("Although likelihood of confusion is a question of fact, it may be decided as a matter of law.").

    ii.   <u>Non-functionality:</u>

"Functional features are by definition those likely to be shared by different producers of the same product and therefore are unlikely to identify a particular producer." *Dippin' Dots, Inc. v. Frosty Bites Distrib., LLC*, 369 F.3d 1197, 1203 (11th Cir. 2004). "These features cannot be appropriated; otherwise, competitors would be prevented from duplicating the new product even to the extent permitted by the branches of the law of intellectual property that protect innovation rather than designations of source." *Id.* Functionality is considered with respect to the design in its entirety. *Id.* As Defendant notes in their briefing, Plaintiff's complaint does not specify which aspect of its design it believes to be non-functional. Thus, the Court will assume that Plaintiff is referring to the whole of all the features combined as non-functional. *See AmBrit,* 812 F.2d at 1538 (stating that a court should consider the totality of the trade dress features). This Circuit has laid out two tests for determining functionality.

> Under the first test, commonly referred to as the traditional test, a product feature is functional if it is essential to the use or purpose of the article or if it affects the cost or quality of the article. Under the second test, which is commonly called the competitive necessity test and **generally applied in cases of aesthetic functionality**, a functional feature is one the exclusive use of which would put competitors at a significant non-reputation-related disadvantage. Where the design is functional under the traditional test, there is no need to proceed further to consider if there is a competitive necessity for the feature.

*Dippin' Dots, Inc.,* 369 F.3d at 1203 (emphasis added). Thus, applying the second competitive necessity test, Plaintiff's design is functional (and not protected) if its exclusivity would put competitors like Defendant at a competitive disadvantage. At this stage of the litigation, finding as a matter of law that no set of facts could show that Plaintiff's design is non-functional goes too far. Although Plaintiff in its complaint does little more than conclusorily allege that its features are non-functional, common sense teaches that the totality of a watch's aesthetic design (including its diamond bezel, Rolex-style band, roman numeral face, and shape of its hands) would not prevent a competitor from manufacturing a different, functional watch that keeps time. Defendant has not yet done anything to rebut that common sense. In its motion to dismiss nor its reply, Defendant does not cite a single case that would support its argument that a GLD monopoly on the aesthetic would put competition at a disadvantage. For example, in *Dippin' Dots*, the Eleventh Circuit relied on evidence about flash-frozen ice cream production process to determine that a different size would alter creaminess, a different shape would alter the freezing-

method, and different colors would inhibit the company's ability to signify flavor to the consumer. *Dippin' Dots, Inc.*, 369 F.3d at 1203-05.

### iii. Secondary Meaning

Secondary meaning is acquired when "in the minds of the public, the primary significance of a product feature ... is to identify the source of the product rather than the product itself." *See Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851, n.11 (1982). Whether a product has established secondary meaning is a question of fact. *Pride Family Brands, Inc. v. Carl's Patio, Inc.*, No. 12-21783-CIV, 2014 WL 347040, at *4 (S.D. Fla. Jan. 30, 2014). For evidence that a product has attained secondary meaning the Eleventh Circuit looks to: 1) the length and manner of the product's use; 2) the nature and extent of advertising and promotion; 3) the efforts made by plaintiff to promote a conscious connection in the public's mind between the trade dress and plaintiff's business; and 4) the extent to which the public actually identifies the name with plaintiffs goods and services. So, under the governing Supreme Court test, Plaintiff needs to plausibly allege that consumers primarily associate the watch design at issue with GLD, LLC rather than merely a watch with diamonds and roman numerals.

Plaintiff does not allege any facts that would give the Court insight into whether Plaintiff can meet its burden. For instance, Plaintiff alleges "this design has become a well-known indicator of the origin and quality of the GLD Alpha Era Watch," "GLD has enjoyed significant sales . . . ," and ". . . products have achieved extraordinary success in brand recognition and market penetration." The complaint includes no support for these statements, such as sales figures, consumer surveys, or advertising budgets.

Ultimately, the trade dress infringement claim is dismissed without prejudice for the plaintiff to refile with at least *some* factual allegations. At the motion to dismiss stage in a different S.D. Fla. trademark infringement case[3], Judge Bloom noted that "a developed factual record is necessary to address these questions" and that a visual depiction of trade dress "is not so vague as to deprive Defendants of fair notice of Plaintiff's claim of trade dress infringement," but it would be a better use of judicial resources to force the Plaintiff to show some of its cards up

---

[3] *S. Beach Skin Care, Inc. v. Dermaset, Inc.*, No. 13-24645-CIV, 2014 WL 11958623 at *2 (S.D. Fla. Aug. 18, 2014).

12

front (especially when it chooses to bring such fact-intensive claims). Even if the side-by-side photo is enough to establish a likelihood of confusion, Plaintiff does not do enough to establish the other threshold elements of a prima facie Lanham Act trade dress infringement case, namely secondary meaning/inherent distinctiveness.

B. Count II: False Designation of Origin under 15 U.S.C. § 1125(a) and Unfair Competition

Plaintiff also brings a claim for false designation of origin and, in the same count, a claim for unfair competition under the same statute. To establish a prima facie case under section 43(a), "a plaintiff must show (1) that the plaintiff had enforceable ... rights in the mark or name, and (2) that the defendant made unauthorized use of it 'such that consumers were likely to confuse the two.' " *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.,* 508 F.3d 641, 647 (11th Cir. 2007). Plaintiff fails to plead a prima facie case meeting the first requirement, and these counts should be dismissed without prejudice as well.

Plaintiff does not allege a registered trademark, and "common-law trademark rights are appropriated only through actual prior use in commerce." *Planetary Motion, Inc. v. Techsplosion, Inc.,* 261 F.3d 1188, 1193–94 (11th Cir. 2001) (internal quotation and citation omitted). "[T]he use of a mark in commerce ... must be sufficient to establish ownership rights for a plaintiff to recover against subsequent users under section 43(a)." *Id.* at 1195. The Eleventh Circuit has applied a two-part test to determine whether a party has proved "prior use" of a mark sufficient to establish ownership: Evidence showing, first, adoption, and, second, use in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark. *Crystal Entm't & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1321 (11th Cir. 2011) (internal citations omitted and alterations made). As described above, the complaint does not include enough information for the Court to make this determination even when taking all facts as true and making all plausible inferences on behalf of the Plaintiff. Thus, Count II is dismissed as well.

C. Count III: Federal Trade Dress Dilution under 15 U.S.C. § 1125(c)

"Title 15 U.S.C. § 1125(c) provides that the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of

the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury. 15 U.S.C. § 1125(c). To establish a dilution claim, a plaintiff must provide sufficient evidence that (1) the mark is famous; (2) the alleged infringer adopted the mark after the mark became famous; (3) the infringer diluted the mark; and (4) the defendant's use is commercial and in commerce." *Brain Pharma, LLC v. Scalini*, 858 F. Supp. 2d 1349 (S.D. Fla. 2012) (Cohn, J.) (internal citations and quotations omitted).

A mark is famous "if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). To determine whether a mark is recognized by the public, courts consider factors such as (1) the duration, extent, and geographic reach of advertising and publicity of the mark; (2) the amount, volume, and geographic extent of sales of goods or services offered under the mark; (3) the extent of actual recognition of the mark; and (4) whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register. *Id.* Trademark dilution claims, are limited to "truly famous marks such as Budweiser beer, Camel cigarettes, and Barbie dolls." *Brain Pharma, LLC v. Scalini*, 858 F. Supp. 2d 1349, 1357 (S.D. Fla. 2012) (citing Bd. of Regents, Univ. of Texas Sys. v. KST Elec., Ltd., 550 F. Supp. 2d 657, 679 (W.D. Tex. 2008)). Plaintiff's complaint again fails to pled a prima facie case of fame, and further, it is likely that no set of facts could put its watch on par with Budweiser, Camel, and Barbie. This Count is dismissed as well.

   D.  Florida Counts

Finally, Plaintiff brings three counts under Florida law. Dilution under Fla. Stat. § 495.151, infringement under Florida common law, and unfair competition and false designation of origin under Fla. Stat. § 501.201-501.213. The analysis under the Lanham Act for trademark infringement also applies to claims of 1) trademark infringement and 2) unfair competition under Florida common law. *See Carnival Corp. v. SeaEscape Casino Cruises, Inc.,* 74 F. Supp. 2d 1261, 1264 (S.D. Fla. 1999), *citing Chanel, Inc. v. Italian Activewear of Florida, Inc.,* 931 F.2d 1472, 1475 (11th Cir. 1991). And dilution under Florida law also requires a famous mark, which as discussed above, is not properly alleged here. Thus, all Florida counts are dismissed as well.

   V.  **Conclusion**

The Court has personal jurisdiction over the corporation, but not the individual defendant. However, Plaintiff's claims for myriad trademark violations under federal and Florida law are

dismissed for failure to state a claim. Other than a side-by-side photo of Plaintiff's watch and Defendants' watch, the Complaint is devoid of any specific allegations and replete with vague, legal conclusions. In a field that is as fact-specific as trademark, it is a better use of judicial resources to allow Plaintiff to re-file their complaint rather than allowing the suit to proceed when the Court has no idea whether Plaintiff could plausibly meet their burdens later in the litigation. This is especially so since the allegedly infringing watch is no longer for sale, and no sales were ever actually completed.

DONE AND ORDERED in Chambers at Miami, Florida, this 15th of January 2021.

*Federico A. Moreno*

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record