UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number: 20-21617-CIV-MORENO**

GLD, LLC,

      Plaintiff,

vs.

GOLD PRESIDENTS, LLC and DERRICK
JAMES MCDOWELL,

      Defendant.

_____/

### ORDER DENYING MOTION TO DISMISS

THIS CAUSE came before the Court upon Defendant's Motion to Dismiss **(D.E. 28)**, filed on **March 24, 2021**.

THE COURT has considered the motion, the response, the reply, pertinent portions of the record, and being otherwise fully advised in the premises, it is

**ADJUDGED** that the motion is **DENIED**.

Plaintiff, GLD LLC, is a Delaware company with its principle place of business in Miami. It designs and sells luxury jewelry and fashion. The Defendant, Gold Presidents, largely does the same. Plaintiff brings six counts of various types of trademark infringement—three federal, three Florida—against Defendant because Gold Presidents offered a watch for sale that is nearly identical to a watch that GLD has offered for sale since May 2019. The allegedly infringing watch is no longer listed and the parties dispute whether a sale was ever completed.



The Court dismissed Plaintiff's first complaint for failure to state a claim but held that the Court had personal jurisdiction over the corporate Defendant. Now, Plaintiff files its first amended complaint. Defendant moves to dismiss once again on Rule 12(b)(6) grounds, but Plaintiff has added sufficient factual details to survive a motion to dismiss.

**Legal Standard**

In order to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead sufficient facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When ruling on such a motion, a court must view the complaint in a light most favorable to the plaintiff and accept the plaintiff's well-pleaded facts as true. *See Twombly*, 550 U.S. at 555-56. In order to establish a facially plausible claim, a plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In other words, Rule 12(b)(6) ensures that a plaintiff includes sufficient specific facts in its complaint that a court would find the allegations, when read in a light most favorable to the plaintiff, to be plausible—not merely possible.

**Analysis**

In its previous order, this Court noted that the complaint was devoid of specifics that would allow it to infer a plausible claim of trademark infringement even if it were to assume everything the complaint said was true. The Court noted "sales figures, consumer surveys, or advertising budgets" were notably absent. This time, Plaintiff has cured those defects. Below is an analysis of what a plaintiff must prove to make a prima facie case under each claim and how the Complaint does so.

### A. Count I-- Federal Trade Dress Infringement under 15 U.S.C. § 1125(a)

Section 43(a) of the Lanham Act creates a federal cause of action for trade dress infringement. *AmBrit, Inc. v. Kraft, Inc.,* 812 F.2d 1531, 1535 (11th Cir. 1986). "The term 'trade dress' refers to the appearance of a product when that appearance is used to identify the producer." *Publications Int'l, Ltd. v. Landoll, Inc.,* 164 F.3d 337, 338 (7th Cir. 1998). "'Trade [d]ress' involves the total image of a product and may include features such as size, shape, color ..., texture, graphics, or even particular sales techniques." *AmBrit,* 812 F.2d at 1535 (internal quotation omitted).

In order to prevail on a claim for trade dress infringement pursuant to this statute, a Plaintiff must prove by a preponderance of the evidence that (1) the trade dress of the two products is confusingly similar; (2) that the features of the trade dress are primarily nonfunctional; and (3) that the trade dress is inherently distinctive or has acquired secondary meaning. *Vital Pharm., Inc. v. Am. Body Bldg. Prod., LLC*, 511 F. Supp. 2d 1303, 1309–10 (S.D. Fla. 2007) (Middlebrooks, J.).

For analysis of similarity and nonfunctionality, readers are referred to this Court's opinion on Defendant's first motion to dismiss. *GLD, LLC v. Gold Presidents, LLC*, No. 20-21617-CIV, 2021 WL 148737 at *7-8 (S.D. Fla. Jan. 15, 2021). The First Amended Complaint does not change that analysis, and the analysis is incorporated here.

Plaintiff's newly adduced allegations do, however, affect inherent distinctiveness/secondary meaning. Secondary meaning is acquired when "in the minds of the public, the primary significance of a product feature ... is to identify the source of the product rather than the product itself." *See Inwood Labs., Inc. v. Ives Labs., Inc.,* 456 U.S. 844, 851, n.11 (1982). Under the Lanham Act, federal trademark protection is available only to "distinctive" marks—"marks that serve the purpose of identifying the *source* of ... goods or services." *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1357 (11th Cir. 2007) (emphasis added) (citations omitted). A mark can be "distinctive" in one of two ways: It can be "inherently" distinctive, or it can "acquire" distinctiveness over time. *Royal Palm Properties, LLC v. Pink Palm Properties, LLC*, 950 F.3d 776, 782 (11th Cir. 2020). Here, the Court will focus on acquired distinctiveness (i.e., secondary meaning) because the Supreme Court has noted that design, like color, is not inherently distinctive. *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 212 (2000). Whether a product has established secondary meaning is a **question of fact**. *FN Herstal SA v. Clyde Armory Inc.*, 838 F.3d 1071, 1084 (11th Cir. 2016) (emphasis added).

For evidence that a product has attained secondary meaning the Eleventh Circuit looks to: 1) the length and manner of the product's use; 2) the nature and extent of advertising and promotion; 3) the efforts made by plaintiff to promote a conscious connection in the public's mind between the trade dress and plaintiff's business; and 4) the extent to which the public actually identifies the name with plaintiffs goods and services. *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1513 (11th Cir. 1984). GLD alleges that the watch at issue has attained secondary meaning via $300,000 spent in advertising, over one million "highly engaged" Instagram followers, over $2,000,000 in every state and 50 countries, media attention, and celebrity endorsements.[1]

---

[1] The celebrity endorsements are mainly from rappers with whom I am not familiar. However, I checked them out and they seem to have a decent following.

a. Length and Manner

The Plaintiff has only used the design at issue for seven months, but "[t]here is no fixed rule as to the length of time a symbol must be in use before it can achieve secondary meaning," *FN Herstal SA*, 838 F.3d at 1084 (quoting McCarthy on Trademarks § 15:54). The Court acknowledges, though, that this is not Plaintiff's strongest argument.

b. Nature and Extent of Advertising and Promotion/Connection Between Trade Dress and Business

Put simply, Plaintiff does enough to make a plausible case that its advertising efforts and celebrity endorsements have created secondary meaning. Whether or not they *actually* do so is the quintessential fact-specific inquiry best left for summary judgment and, if necessary, a jury. *Vital Pharms., Inc. v. Monster Energy Co.*, 472 F. Supp. 3d 1237 (S.D. Fla. 2020) (holding that a Plaintiff could survive summary judgment based on evidence of a $1.7 million advertising campaign and wide social media reach).

c. Intentional Copying

Proof of intentional copying, while not dispositive, is probative evidence of secondary meaning. *FN Herstal SA*, 838 F.3d 1071, 1086 (11th Cir. 2016) (citing *Brooks Shoe Mfg. Co. v. Suave Shoe Corp.*, 716 F.2d 854, 860 (11th Cir. 1983)). It may, for example, indicate a desire for a competitor to capitalize on the goodwill customers already bear to plaintiff. In addition to the nearly identical aesthetic design of the watches, Plaintiff also points out that Defendant's marketing campaign is also a carbon copy of Plaintiff's.



There are identical coupon codes indicating the company's displeasure with the year 2020 (understandable, of course, in light of a global pandemic, surge in unemployment, and bitterly contested presidential election), identical discount amounts, and nearly identical imagery of a champaign bottle wrapped in jewelry.

The Court need not decide at this stage whether these allegations are ultimately true or whether they are enough to convince a fact-finder by the preponderance of the evidence that the GLD Alpha Era watch has attained secondary meaning. Plaintiff survives the motion to dismiss here because it alleges the exact type of specific, factual evidence that courts and jurors look at when trying to answer the above question.[2]

**B. Count II: False Designation of Origin under 15 U.S.C. § 1125(a) and Unfair Competition**

Plaintiff also brings a claim for false designation of origin and, in the same count, a claim for unfair competition under the same statute. To establish a prima facie case under section 43(a), "a plaintiff must show (1) that the plaintiff had enforceable ... rights in the mark or name, and (2) that the defendant made unauthorized use of it 'such that consumers were likely to confuse the two.'" *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.,* 508 F.3d 641, 647 (11th Cir. 2007). This Count now survives the motion to dismiss.

---

[2] It is worth noting that Defendant cites only ONE case in support of its argument that the Plaintiff does not plausibly allege secondary meaning.

Plaintiff does not allege a registered trademark, and "common-law trademark rights are appropriated only through actual prior use in commerce." *Planetary Motion, Inc. v. Techsplosion, Inc.,* 261 F.3d 1188, 1193–94 (11th Cir. 2001) (internal quotation and citation omitted). "[T]he use of a mark in commerce ... must be sufficient to establish ownership rights for a plaintiff to recover against subsequent users under section 43(a)." *Id.* at 1195. The Eleventh Circuit has applied a two-part test to determine whether a party has proved "prior use" of a mark sufficient to establish ownership: Evidence showing, first, adoption, and, second, use in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark. *Crystal Entm't & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1321 (11th Cir. 2011) (internal citations omitted and alterations made). As described above, the amended complaint includes evidence that, when taken as true, plausibly satisfies that two-part test. The celebrity endorsements plausibly shows adoption and advertising/social media following plausibly shows a sufficiently public use.

The final element asks whether a defendant has used the mark in a way that is likely to confuse consumers. As noted above, the Court gave its analysis of "likelihood of confusion" in its Order on the Defendants' first motion to dismiss and stands by that analysis here. It is true that Plaintiff does not allege facts that would satisfy *each* of the seven factors noted in that Order, but the Eleventh Circuit has instructed that application of those factors is not to be mechanistic bean counting, but rather an evaluation of the overall balance. *Frehling Enters., Inc. v. Int'l Select Group, Inc.,* 192 F.3d 1330, 1342 (11th Cir. 1999). And, again, because of the striking similarity of the watches and their advertising, Plaintiff has done enough at this stage to plausibly allege a likelihood of confusion, and thus Count II should not be dismissed.

**C. Count III: Federal Trade Dress Dilution under 15 U.S.C. § 1125(c)**

Title 15 U.S.C. § 1125(c) provides that the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury. 15 U.S.C. § 1125(c). "To establish a dilution claim, a plaintiff must provide sufficient evidence that (1) the mark is famous; (2) the alleged infringer adopted the mark after the mark became famous; (3) the infringer diluted the mark; and (4) the defendant's use is commercial and in commerce." *Brain Pharma, LLC v. Scalini*, 858 F. Supp. 2d 1349 (S.D. Fla. 2012) (Cohn, J.) (internal citations and quotations omitted).

A mark is famous "if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). To determine whether a mark is recognized by the public, courts consider factors such as (1) the duration, extent, and geographic reach of advertising and publicity of the mark; (2) the amount, volume, and geographic extent of sales of goods or services offered under the mark; (3) the extent of actual recognition of the mark; and (4) whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register. *Id.* Trademark dilution claims, are limited to "truly famous marks such as Budweiser beer, Camel cigarettes, and Barbie dolls." *Brain Pharma, LLC v. Scalini*, 858 F. Supp. 2d 1349, 1357 (S.D. Fla. 2012) (citing *Bd. of Regents, Univ. of Texas Sys. v. KST Elec., Ltd.*, 550 F. Supp. 2d 657, 679 (W.D. Tex. 2008)). In its briefing, Plaintiff notes that the *Bd. of Regents* case was decided at summary judgment, not on a motion to dismiss. It further notes that even if its rapper-supported watch is not Barbie-level

famous with federal judges, it still may be famous with certain target audiences. While that may be true, it is not enough to state a federal trade dilution claim.

This exact argument was considered and rejected. *Michael Caruso & Co. v. Estefan Enterprises, Inc.*, 994 F. Supp. 1454 (S.D. Fla.), *aff'd sub nom. Caruso v. Estefan*, 166 F.3d 353 (11th Cir. 1998). In deciding Plaintiff's "Bongo" mark may be famous in the junior women's apparel market, a judge in this District cited district courts around the country and McCarthy on Trademarks and Unfair Competition to hold "even if a mark is distinctive in its particular market, it does not render it inherently distinctive so as to engender immediate recognition in the general public of a particular product." *Id.* at 1463. Plaintiff's mark here still does not rise to the fame of Kodak, Buick, Coca-Cola, or Exxon. *See, e.g.*, *King of the Mountain Sports, Inc. v. Chrysler Corp.*, 968 F. Supp. 568, 578 (D. Colo. 1997); *Golden Bear Intern., Inc. v. Bear U.S.A., Inc.*, 969 F. Supp. 742, 749 (N.D. Ga. 1996). Thus, Plaintiff's trade dilution claims (both federal and Florida) fail and are dismissed. *Michael Caruso & Co.*, 994 F. Supp. 1454, 1464.

### D. Remaining Florida Counts

The analysis under the Lanham Act for trademark infringement also applies to claims of 1) trademark infringement and 2) unfair competition under Florida common law. *See Carnival Corp. v. SeaEscape Casino Cruises, Inc.*, 74 F. Supp. 2d 1261, 1264 (S.D. Fla. 1999), *citing Chanel, Inc. v. Italian Activewear of Florida, Inc.*, 931 F.2d 1472, 1475 (11th Cir. 1991). Thus, the Florida counts, with the exception of the dilution claim, survive the motion to dismiss as well.

DONE AND ORDERED in Chambers at Miami, Florida, this _____ of July 2021.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record